**D.O.F., a minor, and D.J.F. and M. F., his parents and natural guardians**

v.

**LEWISBURG AREA SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 7, 2004.

Decided Nov. 12, 2004.

Reargument Denied Jan. 13, 2005.

Lester L. Greevy, Jr., Williamsport, for appellant.

Allan H. Starr, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Lewisburg Area School District Board of School Directors (the Board) appeals from an order of the Court of Common Pleas of the Seventeenth Judicial District, Union County Branch (trial court), sustaining the appeal of D.O.F. and directing that any record of his expulsion from the Lewisburg Area High School be expunged.

D.O.F. was an honor student in the gifted program in the ninth grade at the Lewisburg Area High School. While in school, D.O.F. participated in the marching band, the concert band, the percussion ensemble and the jazz rock ensemble. D.O.F. had no history of prior disciplinary or attendance problems and no prior criminal record. The matter is before the court as the result of an incident that occurred in May of 2003 as well as discussions that occurred prior to that time. In late April 2003, D.O.F., then age 15, and three female classmates discussed buying a small amount of marijuana for their personal use. The extent and place of these discussions is disputed by the parties. Nonetheless, D.O.F. and his classmates each voluntarily agreed to contribute $10.00 to $12.00 to the venture.

After the money was collected, D.O.F. gave the pooled money to another juvenile who obtained the marijuana. This transaction took place after school hours and off school property. Following a school concert in the evening of Friday, May 9, 2003, D.O.F., his three female classmates and several other friends retreated to D.O.F.'s house to socialize. At approximately 10:30 p.m., D.O.F. and his three female classmates went for a walk to the Linntown Intermediate School playground. At this time, D.O.F. and his three female classmates decided to use the marijuana. D.O.F. pulled out a pipe which he had obtained from another friend and he and his classmates smoked or attempted to smoke the marijuana.

However, a local police officer observed the students at the playground and proceeded to investigate. The students were arrested and charged with misdemeanor offenses of possession and use of a small amount of marijuana for personal use, conspiracy to possess and use and possession and use of drug paraphernalia. D.O.F. was cooperative with the criminal investigation and he received a consent decree as to the charged offenses. Immediately after the incident, in the morning of May 12, 2003, the police officer contacted the principal at the Lewisburg Area High School and informed him of the incident. That same day, the principal interviewed D.O.F. and his classmates individually in his office. Again, D.O.F. was cooperative with the investigation. In fact, D.O.F. prepared a handwritten statement accepting responsibility and expressing remorse for his actions.

D.O.F. was initially suspended for three days. This suspension was noted in a letter from the principal to D.O.F.'s parents dated May 12, 2003. This letter further advised that D.O.F. would be provided with an informal hearing on May 14, 2003. Following this informal hearing, D.O.F. received a ten-day suspension. The girls, however, appear to have received a five-day suspension and were subject to no further disciplinary measures. The same cannot be said for D.O.F. The Principal later issued a notice of charges to D.O.F. advising him that he was in violation of several Board policies relating to student discipline, drugs and alcohol and student rights and responsibilities, as well as various school rules and regulations set forth in the 2002–2003 Lewisburg Area High School Student/Parent handbook. This notice also advised D.O.F. that a for-

mal hearing would be held on May 22, 2003, to determine why he should not be expelled.

A formal hearing was indeed held on this date at which the superintendent, the principal, D.O.F. and his parents all presented testimony. At the conclusion of the hearing, the Board announced its findings that D.O.F. had willfully and deliberately possessed, used and dispensed marijuana on school property, in violation of School Policy No. 227 (drugs and alcohol). The Board adopted the recommendation, with slight revisions, as set forth by the principal at the hearing that D.O.F. be expelled. By resolution adopted June 12, 2003, the Board did in fact expel D.O.F., subject to review and possible reinstatement no earlier than November 1, 2003. The resolution further provided that D.O.F. participate in drug and alcohol assessment and random drug testing until graduation.

D.O.F. thereafter appealed the Board's decision to the trial court. In his appeal, D.O.F. alleged that (1) the Board lacked jurisdiction to discipline and/or sanction him as the incident in question occurred after school hours and absent any connection with a school-related event or activity, (2) given this lack of nexus School Policy No. 227 was irrelevant, and (3) his expulsion was constitutionally defective to the extent that other students involved in the incident did not receive the same sanctions. In the meantime, as his appeal was pending, D.O.F. was reinstated in school

and he sought to expunge the expulsion from his record.

Following hearing and oral argument, the trial court issued an opinion and order in February of 2004 reversing the adjudication of the Board, sustaining D.O.F.'s appeal and directing the Board to expunge D.O.F.'s record. In sustaining the appeal, the trial court found that the Board could not apply School Policy No. 227 to D.O.F. as he was not under the Board's supervision at the time of the incident. In applying the policy, the trial court held that the Board had exceeded its statutory authority under Section 510 of the Public School Code of 1949 (the Code).[1] The trial court noted that the school concert in the evening of May 9, 2003, was over approximately an hour and a half before the incident at the playground. Additionally, the trial court held that D.O.F.'s in-school conduct did not establish a sufficient nexus between the incident and the Board's supervisory authority.[2] The Board thereafter filed a notice of appeal with the trial court.

On appeal,[3] the Board argues that the trial court erred as a matter of law in concluding that it lacked jurisdiction to discipline/expel a student for drug-related conduct that occurred on school property after school hours. Additionally, the Board argues that the trial court erred as a matter of law in concluding that there was a lack of a sufficient nexus between the drug-related activity and the educational process to support its jurisdiction.

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5–510.

2. Based upon these findings above, the trial court did not address D.O.F.'s third argument on appeal concerning the lack of similar sanctions for all parties involved in the incident.

3. Our scope of review of an appeal brought pursuant to the Local Agency Law, 2 Pa.C.S.

§§ 751–754, when, as here, the trial court conducted *de novo* review, is to affirm the order of the trial court unless we find that it is in violation of the constitutional rights of the appellant, or that the court manifestly abused its discretion or committed an error of law. *Giles v. Brookville Area School District*, 669 A.2d 1079 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 686, 679 A.2d 231 (1996).

As this Court agrees with the trial court's decision and further concludes that President Judge Harold F. Woelfel's opinion thoroughly discusses and properly disposes of the arguments raised on appeal to this Court, we adopt the analysis in President Judge Woelfel's opinion for purposes of appellate review.

Accordingly, we affirm the trial court's order on the basis of the opinion in *D.O.F., a minor, and D.J.F. and M.F., His parents and natural guardians v. Lewisburg Area School District Board of School Directors* (Court of Common Pleas of the Seventeenth Judicial District, Union County Branch, No. 03–405, dated February 2, 2004).

**ORDER**

AND NOW, this 12th day of November, 2004, the order of the Court of Common Pleas of the Seventeenth Judicial District, Union County Branch is affirmed on the basis of the opinion issued by President Judge Harold F. Woelfel in *D.O.F., a minor, and D.J.F. and M.F., His parents and natural guardians v. Lewisburg Area School District Board of School Directors,* —— Pa. D. & C. 4th —— (2004) Court of Common Pleas of the Seventeenth Judicial District, Union County Branch, No. 03–405, dated February 2, 2004.

1. The Board rendered its decision at the conclusion of a Disciplinary Hearing conducted on May 22, 2003. Appellants have averred in their appeal that the Board adopted this decision by resolution on June 12, 2003 and thereafter mailed its written adjudication to Appellants. (See, Notice of Emergency Appeal from Adjudication of Lewisburg Area School District Board of School Directors, Paragraphs 6 and 37 respectively). We note that while Appellants have indicated that a copy of the Board's written adjudication has been appended and made a part of their appeal as Exhibit "A", no such document has

**APPENDIX**

IN THE COURT OF COMMON PLEAS OF THE 17TH JUDICIAL DISTRICT OF PENNSYLVANIA UNION COUNTY BRANCH CRIMINAL DIVISION

No. 03–405

D.O.F., a minor, and D.J.F. and M.F., his parents and natural guardians, Appellants,

vs.

LEWISBURG AREA SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS, Appellees

**OPINION**

WOELFEL, P.J., February 2, 2004

D.O.F., a minor and his parents, D.J.F. and M.F. ("Appellants") bring this appeal from a decision rendered by the Lewisburg Area School District Board of School Directors. The Board accepted the recommendation of the District's Administration in finding that D.O.F. violated School District Policy No. 227 and the corresponding Administrative Guideline 227, which resulted in D.O.F.'s expulsion and the imposition of related sanctions.[1] The Board determined that on May 9, 2003, D.O.F. did willfully and deliberately possess, use and dispense marijuana on school property, namely, the playground of the Linntown Intermediate School, in violation of the

been attached to their appeal document. We raise this issue insofar as "[w]hen an appealed adjudication from a local agency is not accompanied by written findings and reasons, we must remand to the agency to make such findings and set forth such reasons." *Big Spring School District Board of Directors v. Hoffman by Hershey*[, 88 Pa.Cmwlth. 462], 489 A.2d 998, 1001 (Pa.Cmwlth.1985) (citation omitted). We assume that insofar as Appellants have not averred the absence of a sufficient written adjudication, one does exist and we need not address the necessity of a remand.

District drug policy provisions referenced above.

Appellants' asserted grounds for reversal of the Board's decision include the following: 1) the Board lacked jurisdiction to discipline and/or sanction D.O.F. because of the incident in question, as the events occurred after school hours, absent any connection of any nature with a school-related event or activity; 2) given the lack of a nexus between the events in question and any school-related event or activity, School District Policy No. 227, and the related Administrative Guideline, are irrelevant; and 3) D.O.F.'s expulsion is constitutionally defective to the extent that other students involved in these events did not receive the same sanctions.

For reasons explained herein, Appellants' appeal will be sustained.

Initially, we note that in Pennsylvania local school boards have broad discretion in determining school disciplinary policy. *Hamilton v. Unionville–Chadds Ford School District*, 552 Pa. 245, 714 A.2d 1012 (Pa.1998). " 'When one attacks the action of a school board concerning matters committed by law to its discretion, he [or she] has a heavy burden as the courts are not prone to disturb a school board's decision. Indeed, they are without jurisdiction to interfere therewith unless it is apparent that the school board's conduct is arbitrary, capricious and to the prejudice of public interest. Lack of wisdom or mistaken judgment is insufficient.' *Commonwealth v. Hall*[, 309 Pa.Super. 407], 455 A.2d 674, 676 (Pa.Super.1983)"; *Giles on Behalf of Giles v. Brookville Area School District*, 669 A.2d 1079, 1082 (Pa. Cmwlth.1995). Moreover, a court is not to act as a "super" school board and substitute its own judgment for that of the school district. Therefore, in the absence of a gross abuse of discretion, the courts

will not second-guess policies of the school board. *Hoke v. Elizabethtown Area School District*, 833 A.2d 304, 313 (Pa. Cmwlth.2003); *In re Appeal of J.A.D.*, 782 A.2d 1069 (Pa.Cmwlth.2001).

However, we must also recognize that "...school districts do not have inherent power to implement any policy they deem fit in the name of school safety. A school district's rulemaking authority is limited to that which is expressly or by necessary implication granted by the General Assembly, regardless of how worthy the purported goal." *Hoke v. Elizabethtown School District*, 833 A.2d 304, 310 (Pa.Cmwlth.2003) citing 22 Pa.Code § 12.3. Moreover, when schools act outside their statutory authority, courts can intervene. *Id.*, at 313.

To the extent that a school district, and thus the Board, is deemed a local agency for purposes of judicial review, a court must affirm the local agency's decision unless: the local agency has made a constitutional error or committed an error of law; there has been a procedural irregularity; or the necessary findings of fact are not supported by substantial evidence. Insofar as we hold that the School District and the School Board have exceeded their statutory authority, as provided in 24 P.S. § 5–510, with regard to its enforcement of its Drug Free School policy, we conclude that the District has committed an error of law.

Having reviewed the filings and submissions of the parties, we have distilled this controversy to a single issue: whether the school district is vested with authority under the School Code to expel a student for drug-related conduct that occurred on school grounds after school hours and absent any connection to or relationship with a school supervised or sponsored event. As Appellants have correctly pointed out, appellate authority directly on point would

appear to be non-existent. Nonetheless, in reaching our decision, we have been guided by the following appellate authority: *Hoke v. Elizabethtown Area School District*, 833 A.2d 304, (Pa.Cmwlth.2003); *Giles on behalf of Giles v. Brookville Area School District*, 669 A.2d 1079 (Pa.Cmwlth. 1995), *appeal den.*, 544 Pa. 686, 679 A.2d 231 (Pa.1996); and *Abremski v. Southeastern School District*[, 54 Pa.Cmwlth. 292], 421 A.2d 485 (Pa.Cmwlth.1980). These three cases address the scope and reach of Section 5–510 of the Public School Code, which states in pertinent part:

> The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper . . . regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school.

24 P.S. § 5–510

In *Hoke v. Elizabethtown School District*, the Commonwealth Court affirmed the decision of the trial court after it enjoined the school district from preventing a student's enrollment in its high school based upon student conduct that occurred while that student was enrolled in a private school. Specifically, the student, Patrick Hoke, had been enrolled at Lancaster Catholic High School, where he was accused of selling a prescription drug to another student while at school. Incident to the investigation, Lancaster Catholic school officials seized a pocketknife from his backpack, which was in violation of the school's weapons policy. As a result of these infractions, Patrick and his parents were informed that he would be expelled from school, but to avoid expulsion, he would be permitted to withdraw.

Upon his withdrawal from Lancaster Catholic without a hearing, Patrick attempted to enroll as Elizabethtown Area High School. Upon learning of the drug and weapons-related incidents, the district informed the student that he could not enroll without undergoing an expulsion hearing. Based upon its Policy 233, the district took the position that the school district would ". . . give full faith and credit to the decision of another school entity suspending or expelling a student for disciplinary reasons." In disposing of the student complaint in equity seeking declaratory and injunctive relief, the trial court declared Policy 233 unlawful, and permanently enjoined the district from proceeding with the expulsion hearing and from preventing Patrick Hoke's enrollment. The trial court determined, and the Commonwealth Court subsequently agreed, that the school district had exceeded its broad rulemaking authority by enacting and enforcing the "full faith and credit" policy set forth in Policy 233.

We note the following excerpts from *Hoke* pertinent to our discussion herein: "[Pursuant to Section 510], the legislature set forth in the School Code the bounds of a school district's authority to regulate school conduct." *Id.*, at 310. ". . . The authority of a school district to expel or otherwise discipline any student who brings a weapon on any school property must be read in the context of other School Code provisions, including Section 510 . . ." *Id.*, at 312. Finally, ". . . [t]he legislature has set out specific statutory provisions that give school district's broad authority to develop and enforce rules to regulate student conduct, including possession of drugs and weapons, and ensure school safety. **The express limitation on this authority, however, is that the school**

districts can discipline only those students who are enrolled in the district and under the district's supervision at the time of the incident." *Id.* at 313, (citations and footnote omitted) (emphasis supplied).

■ Returning to the instant matter, it is undisputed that D.O.F. was enrolled as a student in the Lewisburg Area School District at the time of the occurrence of the events that lead to his expulsion. However, we cannot agree that he was "under the district's supervision at the time of the incident."

Our review of the expulsion hearing transcript reveals the following:

1) On Monday, May 12, 2003, the East Buffalo Township police contacted the high school principal, James T. Zack regarding an incident at the Linntown Elementary School which may have involved the use of marijuana by four high school students. [Transcript, p. 19. lines 15—20].

2) After reviewing district policy and speaking with the District Superintendent, Mr. Zack proceeded to interview the students involved in the incident including D.O.F. [Transcript, p. 19, lines 21—25]

3) Based upon these interviews, Mr. Zack determined that D.O.F. and three other students discussed prior to May 9th contributing collectively to purchase marijuana. [Transcript, p. 20, lines 15—20].

4) D.O.F. gathered the money and gave it to another student who provided the marijuana. [Transcript, p. 20, line 21—p. 21, Line 1].

5) The actual purchase of the marijuana occurred off school property. [Transcript, p. 58, lines 1—3].

6) There had been a concert at the high school on the evening of May 9th, which concluded at 9:00 p.m. [Transcript, p. 22, lines 1—6].

7) After the concert, the students went to D.O.F.'s home. [Transcript, p. 21, lines 2—3].

8) Thereafter, the students went for a walk, proceeding to the playground. D.O.F. packed the marijuana pipe, smoked it, and gave it to the other students while on school property, namely the Linntown playground. [Transcript, p. 21, lines 7—12].

9) These events occurred at approximately 10:30 p.m.

10) D.O.F. was charged with "possession, use and distribution of marijuana while on school property." [Transcript, p. 8, lines 15—16]. More specifically, the Administration alleged that D.O.F. "...brought marijuana onto the playground located at the Linntown Elementary School, put it in a pipe, smoked it and dispensed it to three other students while on school property." [Transcript, p. 8, lines 17—20].

11) At the conclusion of the hearing on May 22, 2003, the School Board voted to accept the recommendation proffered by the Administration that D.O.F. "...willfully and deliberately possessed, used and dispensed marijuana on school property. These events took place on Friday, May 9th, 2003 on the property of the Linntown Intermediate School..." The Board also found D.O.F. guilty of the charges lodged against him arising only from the Linntown playground incident. [Transcript of Proceeding, p. 132, line 19—p. 133, line 2; p. 133, lines 9—10].

■ While we acknowledge that these events did occur on school property,

we cannot conclude that the events in question occurred while D.O.F. was under school supervision such that the District's enforcement of its drug policy could be lawful applied to D.O.F. By the District's own evidence, the school-related event—the concert at the high school—was long over when the conduct occurred at another location. We can discern no connection whatsoever between the playground incident and the concert at the high school which concluded at least 1½ hours prior to the incident. We recognize that it is often necessary for school officials to regulate a student's conduct outside the classroom. It is well within a school board's discretion to promulgate and enforce sanctions for inappropriate behavior in order to maintain the discipline and welfare of students. However, said students must be in the district's charge at school functions. *Billman v. Big Spring School District*, 27 D. & C.3d 488, 496 (Pa.Com.Pl.1983). While the school district does stand "in loco parentis", this status does not invest schools with all authority of parents over children. Instead, it provides for such control as is necessary to prevent infractions of discipline and interference with the educational process. *Axtell v. LaPenna*, 323 F.Supp. 1077, 1080 (W.D.Pa.1971). While the school district takes the position that "on school property" is the equivalent of "under the district's supervision", it has not cited, nor were we able to find, case authority to support this position.

Given that we conclude that the incident in question did not occur while D.O.F. was "under the supervision of the board of school directors and teachers . . .", we find the District's enforcement of Policy 227 and Administrative Guideline 227 under these circumstances to be a violation of its statutory authority as provided in 24 P.S. § 5—510. To the extent that we have

concluded that the School Board exceeded its statutory authority, it follows that the Board committed an error of law. Accordingly, the Board's action need not be affirmed.

We are also compelled to address the Board's contention that the decision in *Giles on behalf of Giles v. Brookville Area School District*, 669 A.2d 1079 (Pa.Cmwlth. 1995), *appeal den.*, 544 Pa. 686, 679 A.2d 231 (Pa.1996), supports its action in expelling D.O.F. insofar as the "planning" of the incident occurred when the students involved in the incident were under the District's supervision. In *Giles*, the Commonwealth Court upheld the expulsion of a student who sold marijuana to another school student off school property. The Court concluded, however, that insofar as "offer" and "acceptance" with regard to the subsequent delivery of the marijuana had occurred during a class period while school was in session, the school board acted within its authority under § 5–510. In *Giles*, the Commonwealth Court stated that ". . . the transaction between Giles and Guild while in their German class on school property was an integral part of the subsequent sale and distribution of the drugs at the Giles' home." *Id.*, 669 A.2d at 1082. Under these circumstances, this "offer and acceptance" constituted conduct that occurred at such time as the students were under the supervision of the board of school directors and teachers. *Id.*

We perceive that the instant matter is distinguishable from the circumstances in *Giles*. First of all, the Administration's allegations against D.O.F. do not arise from any conduct extraneous from the Linntown playground incident. Likewise, the Board's decision to expel D.O.F. rests solely on its conclusion that D.O.F. violated the school district's drug policy based upon the Linntown playground incident and no other conduct.

In addition, having reviewed the transcript of the expulsion proceeding, we do not conclude that the existence of some sort of "plan" or "offer and acceptance" akin to the circumstances in *Giles* has been established by "substantial evidence." [2]

For example, Principal Zack testified that based upon the student interviews, he believed that prior to May 9th the students talked about "using" as opposed to "buying" marijuana. [Transcript, p. 26, lines 22—23]. There is no testimony from Mr. Zack where or how these discussions took place. The only testimony referring to the "plan" consists of the following:

Q: And in terms of the three girls, did you discuss the plan, if you will, to secure the pot and then smoke it prior to the actual date of May the 9th?

A: Yes.

Q: And did you discuss it during school?

A: No. I wouldn't say we discussed the plan. I asked them on a couple of occasions when they would have the money.

Q: And that was during school?

A: Yes.

Q: And on school property?

A: Yes.

[Transcript, p. 54, line 19—p. 55, line 5].

We cannot conclude that a "do you have the money" inquiry without more is adequate to support the contention that the plan, conspiracy, or agreement to obtain and use marijuana on school property was hatched while D.O.F. and the other students were under the District's supervision. We note that the marijuana was purchased off school property and was stored at D.O.F.'s home. In addition, we have not found evidence in the record that D.O.F.'s contact with the other student "supplier" occurred during school hours, on school property, or during a school sponsored event. Thus, we view the nexus between the planning of this incident and the necessary "under school supervision" component to be tenuous.

### Conclusion

It is well established that local school boards are empowered to impose disciplinary sanctions upon their students for drug related conduct during the time those students are in attendance at school. *Abremski v. Southeastern School District*[, 54 Pa.Cmwlth. 292], 421 A.2d 485, 488 (Pa.Cmwlth.1980). In addition, we are sensitive to the challenges facing a school district when exercising its authority to provide a safe and drug-free environment conducive to the education and development of all students within its charge. But we have not been called upon to assess the sincerity or diligence of the School Board's decision or the Administration's efforts.[3] Our obligation is to assess whether the School Board has acted within the parameters of its legal authority provided for by the Legislature. Finding that it has not, we are compelled to sustain Appellants' appeal.

Accordingly, the Adjudication rendered by the School Board of the Lewisburg Area School District will be reversed and the record of D.O.F.'s expulsion shall be expunged.

BY THE COURT:

/s/ Harold F. Woelfel, Jr.

HAROLD F. WOELFEL, JR., P.J.

---

2. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Accitelli* [*Acitelli*] *v. Westmont Hilltop School District*[, 15 Pa.Cmwlth. 214], 325 A.2d 490, 493 (Pa.Cmwlth.1974).

3. Nor should our decision herein be construed as condoning D.O.F.'s conduct.

cc:   The Honorable Louise O. Knight, Judge
Allan H. Starr, Attorney
Lester L. Greevy, Jr., Attorney
J. David Smith, Attorney
Mary F. Leshinskie, Attorney, Law Clerk
Administrative Assistant

CERTIFIED FROM THE RECORD
ON THIS DATE

FEB 3 – 2004

PROTHONOTARY-CLERK OF
COURTS,
UNION COUNTY, PA